COMMONWEALTH *vs.* GEORGE MILLER.

On the trial of an indictment, charging the defendant with knowingly uttering as genuine three forged promissory notes of the same tenor and date, and for the same amount, and purporting to be signed by S. F. B., the attorney for the commonwealth, having first produced three notes purporting to be signed by S. F. B., each for the same amount, and of the same tenor and date, with the notes described in the indictment, and having offered evidence that they were forged by tracing thereon the signature of a genuine note, then offered in evidence thirty other similar notes which had been uttered by the defendant at or near the same time with the former, and which were also alleged to be forged in the same man-

ner, in order to prove knowledge on the part of the defendant that the notes in question were forged; the defendant thereupon admitted that he passed the notes in question, and, if they were not genuine, that he knew that fact, and then objected to the admissibility of the evidence. It was held, that the defendant's admission did not supersede the evidence, or render it incompetent; that the prosecuting officer might prove and make out the case for the commonwealth, by proper and legal evidence, without being obliged to rely upon any admission of the defendant; that if the evidence offered had any tendency to prove that the three notes in issue had been formed from one pattern by tracing, it had some tendency, and was therefore admissible, to prove the forgery thereof in that form; and that, as the evidence was admissible to prove facts bearing upon the issue, it was no objection to it, that it had also some effect to corroborate the testimony of the supposed maker, that the notes in question were forgeries.

Where, on the trial of an indictment for uttering as genuine a forged promissory note, the supposed maker testified that he had never given any one his name in blank, so that a note could be written over his signature; it was held, that the testimony of a witness, that he once saw a blank paper, on which a note was filled up in his presence, purporting to have the indorsement of the supposed maker upon it, was not admissible to contradict the testimony of the latter, unless such indorsement was first proved to be a genuine signature.

The supposed maker of certain promissory notes alleged to be forged having testified, on the trial of an indictment for uttering the same, that he had given the defendant one note of the tenor of those mentioned in the indictment, and but one, and that the notes given in the course of his business in Boston were entered in the books kept by his clerk; and the clerk having testified, that he kept an account of the supposed maker's transactions in Massachusetts, and that he knew of the latter's giving one note corresponding with the description of the notes set forth in the indictment; the prosecuting officer proposed to inquire of the clerk, whether he knew of the supposed maker's giving the defendant any other *such* note than the one he had mentioned; it was held, that the term "such" did not limit the inquiry to a note of a particular tenor or purport, but to the giving of any note of a like kind, and that the question was therefore admissible.

The supposed maker of notes alleged to be forged having testified, on the trial of an indictment for uttering the same, that all the notes given by him prior to the date of the notes alleged to be forged were entered in the books kept by his clerk; and the defendant having introduced evidence to prove, that there were confidential transactions between him and the supposed maker, in which the latter had given him notes to be negotiated for his own accommodation, which were not intended to be entered and would not appear on the books kept by the clerk; it was held, that the prosecuting officer, in order to rebut this testimony, might introduce evidence to show, that three notes which had not been entered on the books of the clerk, but which had been negotiated by the defendant, were all taken up and paid by the latter a short time before their maturity.

On the trial of an indictment, charging the defendant, in three counts, with uttering three forged promissory notes of the same tenor, if three such notes are introduced in evidence, it is not necessary for the prosecuting officer to show, upon which of them each of the counts in the indictment was found; each count being provable by either of the three notes.

THE defendant was tried at the last October term of the municipal court, before *Wells,* C. J., and convicted on an

indictment charging him with uttering certain forged promissory notes therein described.   The indictment contained six counts, in each of which the defendant was charged with uttering a promissory note described as follows : —

" $2500.                          Concord, Mass., July 30, 1847.
    Four months after date, value received, I promise to pay George Miller, or order, twenty-five hundred dollars, at the Suffolk Bank, in Boston.
                                   S. F. Belknap."

The attorney for the commonwealth, in opening the case, stated that the indictment was for the uttering of but three notes, there being two counts on each note, varying from one another only in mentioning or not the person to whom the note was uttered.   He further stated, that he expected to prove, that the forgery of the notes described in the indictment was committed by tracing the name of the supposed maker over his genuine signature.

In support of the several counts in the indictment, three notes were introduced, which were alleged to correspond to the notes described ; and evidence was introduced tending to prove, that these notes were forged, and in the manner alleged.   The prosecuting officer then offered thirty other similar, or nearly similar notes, which had been uttered by the defendant at or near the time, when the notes mentioned in the indictment were uttered, and which were also alleged to be forgeries.   This evidence was offered to prove the guilty knowledge of the defendant, and also the forgery.

The defendant, then, in open court, admitted that he did pass the notes described in the indictment, and that if the signatures thereto were not actually written by Belknap, the defendant knew that fact ; and he thereupon objected to the introduction of the notes in evidence.

The presiding judge stated, that if that admission was to influence his decision, he should require it to be reduced to writing, and signed by the defendant and filed in the case ; but he was of opinion, that, considering the peculiar character of the alleged forgery, the inspection of other similar notes, uttered by the defendant about the same time, and

21*

alleged to have been forged in the same way, might aid the jury in determining the question of the forgery of the notes described and introduced in support of the indictment; that the evidence offered was admissible for this purpose, and therefore that the proposed admission of the defendant should not be received ; and that the jury should be instructed to consider the case in the same way, as if the admission had not been made. The defendant did not withdraw his admission.

The prosecuting officer called and examined Belknap, as a witness, who testified, among other things, that he never gave any one his name in blank, so that a note could be written over his signature ; and, in particular, that he did not give a blank to one Dunlap, in order that a note might be written thereon over his signature.

The defendant, to contradict this statement, first called Dunlap as a witness, who testified that he resided in Portland ; that he never had the signature of Belknap in blank to the best of his recollection ; that he knew one Jose who was in business in Portland, of whom he bought articles to furnish a house, but could not say whether he ever gave Jose a note; that he had had Belknap's notes, but never in blank ; that he did not finally settle his bill with Jose by a note of Belknap; that he thought he had the goods of Jose before he went into partnership with Kingsbury ; that he had no doubt, that if he ever wrote a note with the name of Belknap indorsed upon it in blank, it was a genuine signature of Belknap, or authorized by him; that Belknap never gave him a blank paper with his name on it ; and that Belknap, to the best of the witness's recollection, never gave him authority to use his name.

The defendant then called Jose as a witness, who testified that he knew Dunlap ; that Dunlap once filled up a note to the witness, which had Belknap's name on the back of it ; that this note was signed by Kingsbury & Dunlap, who were then partners; that the witness placed the note in the hands of Wood, a broker, of whom he received the amount when

it fell due; and that he could not say what had become of the note. Neither Kingsbury nor Wood was produced as a witness; nor was there any evidence other than the above that the note was lost.

The attorney for the commonwealth objected, that the foregoing evidence was incompetent to contradict Belknap as to the point alluded to, and the presiding judge so ruled.

The witness Belknap also testified, that he gave one note corresponding with those described in the indictment, and but one, and that all his money transactions with the defendant, during the months of July and August, 1847, were made with the knowledge of one Scott, who was his confidential clerk, and kept an account of all his money dealings in Massachusetts, the witness living at that time in Vermont.

The said Scott testified, that he was Belknap's confidential clerk, and that so far as he knew or was informed, he kept an accurate account of all Belknap's money transactions in Massachusetts. He further testified, that he knew of the making and negotiating of one note corresponding with the description in the indictment, and stated the facts connected therewith. He was then inquired of by the attorney for the commonwealth, whether he knew of Belknap's giving the defendant any other such note than the one he mentioned. The defendant objected to this question, but it was admitted by the presiding judge.

The defendant contended, and introduced evidence tending to prove, that the relations between him and Belknap were of the most confidential nature, and that on various occasions Belknap had given him his notes, without receiving any consideration therefor, to be negotiated by him for his (the defendant's) benefit.

To meet this evidence, the attorney for the commonwealth offered to prove, that, prior to this time, July, 1847, the defendant had forged the name of Belknap to notes which he had negotiated, and had either paid the same before they fel due, or had managed to obtain possession of the notices, so that Belknap should have no knowledge of their existence.

In support of this ground, the prosecuting officer called as a witness William Whitney, who testified, without opposition at the time, that the defendant uttered and passed to him two of the before mentioned "thirty similar notes." Having thus testified, he was then further inquired of, whether he had not, previous to receiving those two notes, received from the defendant certain other notes, purporting to be signed by Belknap, and payable to the defendant.

The witness, in answer to this inquiry, testified, among other things, that in the months of December, 1846, and February and April, 1847, he did receive from the defendant three notes purporting to be signed by Belknap, and payable to the defendant, all of which were paid by the defendant a short time before their maturity. Belknap testified, in reference to this point, that all the notes, which he had given prior and up to the date of any of the thirty-three notes alleged to be forged, were entered and recorded on his books kept by Scott, his clerk and book-keeper ; and Scott testified, that neither of the notes testified of by Whitney as having been received by him in the months of December, 1846, and February and April, 1847, were entered or recorded on Belknap's books.

The inquiries of Belknap and Scott, to which these statements were in answer, were not objected to by the defendant.

The defendant contended that there were many private and confidential transactions between him and Belknap, in which many notes were given by Belknap to him, which notes were never entered nor intended by Belknap to be entered on his books ; and he produced much evidence, which, he insisted, had a tendency to prove that such was the fact. But he offered no evidence at all relative to the three notes testified to by Whitney, as having been received by him.

The commonwealth's attorney offered evidence tending to prove that no such notes as those testified to by Whitney, were ever given by Belknap.

In closing for the defendant, his counsel contended, that all the evidence given for the prosecution by Whitney, rela-

tive to the said three notes, was irrelevant and incompetent, that it could not be used by the prosecution for any legitimate or proper purpose; and requested the court so to rule, and to withdraw the evidence from the consideration of the jury.

The commonwealth's attorney insisted that the evidence was competent for the purpose of proving that the three notes were forged and spurious; and the presiding judge declined to rule that it was irrelevant or incompetent, and to exclude the same from the consideration of the jury; but he ruled that the evidence was competent for the purpose of disproving the ground taken by the defendant relative to private and confidential transactions between him and Belknap, and the giving of notes by the latter, not recorded or intended to be recorded, on his books; and further that the evidence was admissible for no other purpose.

In the closing argument for the defendant, his counsel contended and requested the court to instruct the jury, that it was not sufficient for the commonwealth to prove, in order to warrant a verdict against the defendant, that the defendant had committed several offences exactly like that set forth in any one or all of the counts, without also proving which of those offences was the one alleged and presented by the grand jury, in some particular count contained in the indictment.

But the presiding judge refused so to rule, and instructed the jury, that if they were satisfied, especially in the absence of any proof as to which of the notes were before the grand jury, that the defendant uttered the several forged notes, which were described in some of the several counts in the indictment, and that the notes introduced in proof were properly described, they might find him guilty upon such counts, without proof as to which of the particular notes intended by the grand jury were described in each or any particular count; and that if the jury should find the defendant not guilty with regard to either one of the notes offered in evidence, in support of any one count in the indictment, they might find him guilty as to the other notes, although there

was no evidence to enable them to determine in which of the counts either of the offences charged upon the defendant was set out and presented by the grand jury.

The jury found the defendant guilty on the three last counts in the indictment; and the defendant thereupon alleged exceptions to the rulings and instructions above mentioned.

This case was argued and decided at the last November term.

*J. H. Bradley*, for the defendant.

*S. D. Parker*, (county attorney,) for the commonwealth.

SHAW, C. J.    The defendant having been convicted in the municipal court of uttering three forged notes, as true and genuine, knowing them to be forged, the case is brought here upon sundry exceptions taken by him to the opinions and decisions of that court, in matters of law.

1. The first question may be thus stated : The attorney for the commonwealth produced three notes purporting to be signed by S. F. Belknap, each for the same amount, and of the same tenor and date, and offered evidence tending to show that they were forged, and forged in a particular manner, to wit, by taking a genuine note, and tracing the signature on the alleged forged notes.    The commonwealth afterwards offered thirty other similar notes, which had been uttered by the defendant, at or near the same time, with the notes in question, and which were also alleged to be forged.    These notes were offered as tending to prove the guilty knowledge of the defendant, that the notes which he was charged with uttering were forged notes.    The defendant admitted that he passed the notes, and if they were not genuine, that he knew that fact, and thereupon objected to the evidence.    Before such admission was reduced to writing, to be filed, the court expressed an opinion, that in reference to the peculiar character of the forgery charged, the inspection of other similar notes, uttered by the defendant, about the same time, and alleged to have been forged in the same way, might aid the jury in determining the question of the forgery of the notes

in issue, and that the evidence was admissible for this purpose; and, further, that the proposed admission should not be received as a substitute for the testimony objected to, but that the jury should consider the case in the same way as if the admission had not been made. This admission of evidence and direction are the ground of the first exception.

It is very clear, we think, and, indeed, it is not contested, that this was competent evidence to prove the guilty knowledge, with which the three notes in question were passed; or rather that it would have been so, but for the admission offered by the defendant, that if the notes were forged, he knew that fact. We think it very clear, that this admission did not supersede this evidence or render it incompetent. The offer was hypothetical, and was accompanied by an express denial of the forgery. Besides, it was competent for the prosecuting officer to prove and make out his case by proper and legal evidence, without being obliged to rely upon any admission of the defendant. The evidence, therefore, was rightly admitted, for a legitimate and proper purpose; no exception can be taken to its admission; and the only remaining question is, whether the jury might give it any weight on the question of forgery.

If these notes had been offered in evidence, as forged notes passed by the defendant, with a view of showing that he had committed other similar offences, in order to lead to an inference, that he was more likely to have committed this, the evidence would have been clearly inadmissible, as contrary to the settled rules of criminal law established by the authorities. It is true, these other notes were offered as forged notes, which had been passed by the defendant; and they were admitted not because the evidence thereby charged the defendant with other crimes, but because they were competent evidence to prove the guilty knowledge, with which these three were passed; 1 Chitty, C. L. 564; *Rex* v. *Ball*, 1 Camp. 320; *Rex* v. *Wylie*, 1 New Rep. 92; and because they had also some tendency to show that the mechanical formation and structure of the notes indicated, that they were not separately

written, as a man giving his genuine signature to independent notes would be likely to write ; but that from the exact similitude of the formation of the several notes, some inference might be drawn, that they were formed from one prototype. If they had any tendency to prove that the three notes in question had been formed from one pattern, by tracing, they had some tendency to prove the forgery of these notes in that form. Suppose a question were to arise, whether an instrument, apparently written, were manuscript or lithography ; if a single paper were produced, it might be doubtful ; but if many others were produced coming from the same source, having the same minute strokes and marks, and even the same defects and blemishes, this evidence would have a tendency to settle the question of identity of origin.

But, however the question might have stood before Belknap was called as a witness, when he was called, it became necessary that the notes in question should be given in evidence, in order that he might be examined upon and testify respecting them, individually, whether they were forged or not. He testified that they were forged, and were not his true signatures.

The rule, we suppose, is well settled, that a party cannot offer evidence of character, or of other facts, not within the issue, for the sole purpose of corroborating the testimony of his own witness ; and here the argument is, that Belknap testified under the pressure of a deep interest in the question, and that where so many similar notes were extant, he might honestly declare a particular signature to be forged, when the jury might doubt, whether he could distinguish between the spurious and the genuine, especially if he himself admitted, that it would be difficult for him to distinguish them. Under these circumstances, if, on a comparison of the notes in issue, and the notes produced, they appeared to be formed mechanically, on the same pattern, and after one prototype, it would have a tendency to corroborate Belknap in his testimony that the notes in question were forgeries. If they were offered solely for the purpose of such corroboration, the evidence

would be open to the objection. But if this evidence was rightfully admitted, for a legitimate and proper object, it is certainly no objection to it, that it has a tendency to corroborate the testimony of the principal witness. It was competent evidence, tending to prove facts bearing upon the issue, and if it had an influence in corroborating the testimony of Belknap, it was a proper and legitimate influence.

2. The next exception arises from the direction of the judge in respect to the testimony of Dunlap and Jose. Belknap had testified that he had never given any one his name in blank, so that a note could be written over his signature, and in particular that he did not give out such a blank to one Dunlap. Dunlap, on being called as a witness to contradict this statement, and to prove that he had had Belknap's signature in blank, denied it, both as to the general fact, and as to the particular instance. Jose was then called as a witness, to prove that Dunlap, then of the firm of Dunlap & Kingsley, once filled up a note to the witness, which had the name of S. F. Belknap indorsed upon it, which the witness negotiated to one Wood, to whom the note was paid at maturity. The judge ruled, that this evidence was not competent to contradict Belknap as to the point stated.

We can perceive no just ground of exception to this decision. It is difficult to perceive how Jose could be a witness at all. So far as he went to contradict Dunlap's testimony, who was the defendant's witness, not upon any fact within the issue, but with a view to impeach the credit due to him, his testimony was wholly inadmissible. Nor, as independent testimony, had it any tendency to contradict Belknap, as to the point to which he had testified. It amounted to no more than this, that he once saw a blank paper, on which a note was filled up, in his presence, purporting to have the indorsement of Belknap upon it. But, whether it was a genuine signature, or a forgery, he does not state or profess to know; nor, indeed, does the question appear to have been asked. Unless it was proved to have been the genuine signature of Belknap, the evidence had no tendency to prove that Belknap

had testified falsely in stating, that he had in no instance given out his signature in blank.

3. The next exception turns upon an objection taken by the defendant to a question allowed to be put to the witness Scott. Belknap had testified that Scott kept his books, here, he himself living in Vermont; that he had given Miller, the defendant, one note, of the tenor of those mentioned in the indictment, and but one, and that the notes given in the course of his business in Boston were entered in the books kept by Scott. Scott testified that he was the confidential clerk of Belknap, and that he kept an account, so far as he knew them, of his transactions in Massachusetts; that he knew of his giving one note corresponding with the description of the notes set forth in the indictment; and he stated the facts connected with the making and negotiation of that note. He was then inquired of by the counsel for the prosecution, whether he knew of Belknap's giving the defendant any other such note than the one he had mentioned. This question was objected to, but the judge permitted it to be put.

The grounds of this objection are not stated in the exceptions. In the argument, it is suggested, that by inquiring whether any *such* note was issued, the witness was called on to state the tenor, or terms, of such note, and so to prove the contents of a written paper, without producing it, or giving any reason for not producing it. It seems to us, that this objection is without foundation. We cannot perceive that this question assumes the execution of any note, and asks for its tenor or character, as the objection supposes; on the contrary, it assumes it to be uncertain, until the question is answered, whether any similar note, of any contents, had been issued or not; and the question is put with a view to ascertain this fact by the answer of the witness, affirmatively or negatively. If he had answered *no*, as he might have done, then there was no note, and no contents of any note to be proved; it was a simple fact. If he had answered *yes*, that such a note had been given to the defendant, then, on proof of notice to the defendant to produce it, or to account for it and its

non-production, it would have been competent to prove the contents. The term "such" did not limit the inquiry to a note of a particular tenor or purport, but to the fact of giving any note of the like kind.

4. It was relied on in the defence, that there were confidential transactions between the witness Belknap and the defendant, in which Belknap had given him notes to be negotiated for his own accommodation, and which were not intended to be entered in his books, and therefore would not appear in the books kept by Scott ; and evidence to this effect was offered by the defendant. To rebut this testimony, William Whitney was called as a witness, who testified, — his testimony not then being objected to, — that he had taken of the defendant two of the thirty notes alleged to be forged ; and further that, previously, to wit, in December, 1846, and in February and April, 1847, he did receive from the defendant three notes, purporting to be signed by Belknap, and payable to the defendant. Belknap had testified, that all the notes given by him to the defendant, prior to the thirty-three notes, were entered in the books, and Scott had testified, that the three notes testified of by Whitney had not been entered in the books. Whitney testified that these three notes were all paid by the defendant, a short time before their maturity. As the payment of a note before its maturity by an indorser would have the effect to prevent the fact of its execution from being notified to Belknap, who purported to be the maker, it was argued, that this had some tendency to show, that these notes were forgeries, and so were not confidentially given as accommodation notes, not intended to be entered on the books, as insisted on by the defendant. The counsel for the defendant, in the close, asked the court to direct the jury, that this evidence, coming from the testimony of Whitney, was incompetent and irrelevant, and ought not to be considered by the jury ; which direction the judge declined to give, but left it to the jury, and instructed them, that the evidence was competent to disprove the ground taken of private and confidential transactions, not intended to be entered in the

books, and that it was admissible for that and for no other purpose. The court are of opinion, that this instruction was right. The evidence had a tendency to prove, that the notes were paid and taken up out of the usual course, and that this was done to conceal from Belknap the fact of their execution ; which he (the defendant) would have no motive to do, if they were obtained and entered in his books in the usual course of business. Besides, the evidence having been received without objection, its weight and effect were for the jury.

5. The last exception is certainly an extraordinary one. The defendant was charged by the grand jury, in three distinct counts, on which the defendant has been found guilty, with uttering three distinct notes, of the same date, amount, and time of payment, in other words, of exactly the same tenor. But it is objected for the defendant, that he cannot be found guilty on any one count, without affirmative proof showing which one of these notes was before the grand jury, when they drew the first count, and so of each count, and that evidence must be sought from the grand jury, to show how they designated these three notes, and how they arranged them and appropriated them to the three several counts. The court are of opinion, that this objection is quite groundless.

We know what the grand jury did, by the official act which they have returned, the indictment. They charge the defendant with uttering a forged note as true, precisely described in all particulars. Before the traverse jury, the prosecutor offers a note of precisely that description, in all particulars, with proof that it was uttered and passed by the defendant, knowing it to be forged. The fact, therefore, is well charged, and fully proved ; the *allegata* and the *probata* correspond ; and why should not conviction follow ? But the defendant says there is another note, and still another, which would have proved the same charge ; be it so, that is no reason why a conviction should not follow, on plenary proof of all the material facts alleged. Had the jury found

either one of the notes not to be a forgery, the slightest possible circumstance, or shade of evidence, would have been sufficient to warrant them in finding him not guilty, on either the first, second, or third count, and guilty on the two others. As they found him guilty on all three, there seems no color for the exception; each count was proved by either of the three notes.